IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RICHARD P. HARROLD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.: 3:23-cv-866 |
| | ) |
| LEWIS J. HAGEN III, individually and in his | ) |
| official capacity as an Officer of the Chesterfield | ) |
| County Police Department, Chesterfield County, | ) |
| Virginia, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Richard P. Harrold ("Mr. Harrold" or "Plaintiff"), by counsel, respectfully states

the following for his Complaint against the defendant, Lewis ("Lewie") J. Hagen III ("Officer

Hagen" or "Defendant").

## I.   INTRODUCTION

1.    This action arises out of an incident in which Mr. Harrold was unnecessarily and

wrongfully mauled and seriously injured by a police dog ("K-9") that was handled by Officer

Hagen.

2.    Mr. Harrold is an amputee (missing his lower left leg below the knee) who also has

serious a medical condition that, if untreated, can cause him to do things that are out of character

for him which he later does not remember doing. For reasons that are unclear, Mr. Harrold, a man

with no prior serious criminal record, broke into a car dealership on the night of December 26,

2021.

3.    That night, in responding to the call, Officer Hagen violated a series of fundamental

principles concerning the use of police K-9s and the use of force by law enforcement officers

generally.

4.      Officer Hagen's actions violated Mr. Harrold's clearly established rights under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and excessive force in connection with a seizure.  Mr. Harrold's rights under the common law of Virginia were also violated.

5.      During his encounter with Officer Hagen and his K-9 police dog, Mr. Harrold was unarmed and submissive and he was never a threat to any law enforcement officer, the K-9, or any other person.  Nevertheless, Officer Hagen caused the dog to attack Mr. Harrold, resulting in severe and painful dog bites and scratches over multiple areas of his body, including his amputation stump which was badly injured.  Before gaining control of the K-9, Officer Hagen even allowed the K-9 to bite and scratch at Mr. Harrold's scrotum and anus.

## II.      PARTIES

6.      The plaintiff, Richard P. Harrold, is a natural person and citizen of the Commonwealth of Virginia, where he currently resides.

7.      Defendant, Lewis ("Lewie") J. Hagen III, is a natural person and citizen of the Commonwealth of Virginia, residing in Chesterfield County, Virginia.

8.      At all times relevant to this action, Officer Hagen was employed as an Officer with the Chesterfield County Police Department ("CCPD") and acting within the scope of such employment.  His residence and regular place of business are in Chesterfield County, Virginia.

9.      CCPD is a department or agency of the County of Chesterfield, Virginia ("County").

10.     At all times relevant to this action, Officer Hagen was a K-9 handler with the CCPD, meaning he was responsible for handling police K-9s for law enforcement purposes such

as searching for persons and drug detection.

11.     Upon information and belief, the police K-9 handled by Officer Hagen at the time and place described herein was a patrol/drug dog named "Kona" (Badge #1599).  Kona was a Belgian Malinois which is described as "'an alert, high-energy breed, popular as both a police and military working dog' that is 'sometimes mistaken for the German Shepherd Dog.'" *Brooks v. Anderson Police Dept., City of Anderson,* 975 N.E.2d 395, 398 (Ind. Ct. App. 2012) (citing the American Kennel Club website).  Kona died on January 20, 2023.

12.     Officer Hagen is sued in his individual capacity and in his official capacity as an Officer with CCPD.

### III.     JURISDICTION AND VENUE

13.     Title 42 of the United States Code, section 1983, authorizes this action at law for Mr. Harrold, the injured party, against Officer Hagen, who acted under color of a statute, ordinance, regulation, custom and/or usage of the County, and subjected Mr. Harrold, or caused Mr. Harrold to be subjected, to a deprivation of rights secured to him by the Fourth Amendment to the Constitution of the United States, which prohibits unreasonable searches and seizures without probable cause and the use of excessive force by law enforcement.

14.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as Mr. Harrold's claims arise under an assertion of his rights under the United States Constitution by and through 42 U.S.C. § 1983.

15.     Jurisdiction is also proper pursuant to 28 U.S.C. § 1331 as this is a civil action arising under the Constitution or laws of the United States.

16.     This Court has supplemental jurisdiction over Mr. Harrold's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are related to and form the same case or

controversy as Plaintiff's claims under 42 U.S.C. § 1983.

17.     Venue for this action properly lies in this Court pursuant to 28 U.S.C. § 1391(b) and Local Rule 3 because a substantial part of the acts giving rise to the unconstitutional conduct alleged herein arose in the Richmond Division of the Eastern District of Virginia.

## IV.     FACTUAL ALLEGATIONS

### A.     Mr. Harrold's background and medical conditions

18.     At the time of his arrest on December 26, 2021, Mr. Harrold was 44 years old.

19.     At the time, and according to documents associated with the subject charges, Mr. Harrold was approximately five feet, ten inches tall and weighed 145 pounds.

20.     Years ago, Mr. Harrold had his left leg amputated below the knee and he uses a prosthetic lower leg and foot.  He has mobility limitations as a result.

21.     On the night in question, Mr. Harrold was unarmed.  He had a small utility knife in his pocket that he never removed or attempted to remove at any relevant time.  After the K-9 attack, while he was in handcuffs, he told officers that he had the knife in his pocket.  That was the first time any officer, including Officer Hagen, knew about the knife.

22.     After Mr. Harrold was mauled by the K-9 police dog and needed medical attention, one of the CCPD officers described him as a "tiny human with one leg."

### B.     The events of December 26, 2021

23.     During the evening of December 26, 2021, for reasons that are unclear to Mr. Harrold, he broke a glass door and entered a used car dealership called VA Cars, located at 7729 Midlothian Turnpike in Chesterfield County, Virginia.

24.     An alarm was triggered that eventually resulted in a report to the CCPD and members of the CCPD responded to the scene.  Officer Hagen was one of the CCPD officers who

responded to the scene along with his K-9 police dog, Kona.

25.     Mr. Harrold was apprehended and arrested in a most unfortunate manner, as described below.

26.     The resulting criminal charges concluded on September 16, 2022 with Mr. Harrold pleading guilty to two misdemeanors, trespassing and vandalism.  All other charges were dismissed upon the Commonwealth's motion to *nolle prosequi.*

27.     Mr. Harrold was not suspected, accused, nor charged with any crime against any person (as opposed to property) or an offense that involves a threat of injury or violence against another person.

28.     Mr. Harrold was not suspected, accused, nor charged with any offense involving violence or a threat of injury directed at any of the law enforcement officers who participated in his arrest, including the K-9 police dog and Officer Hagen, the dog's handler.

**C.     The unlawful and unreasonable K-9 attack of Mr. Harrold's person caused by Defendant**

29.     On December 26, 2021, after police responded to the VA Cars location, Mr. Harrold went up a flight of stairs and waited in a storage room.

30.     He was scared, confused, and did not know what to do, but he intended to wait in the storage room until he was arrested.

31.     Mr. Harrold had been sick and without much sleep for the four previous days and he was having an episode caused by his medical condition.

32.     Mr. Harrold recalls calling out to the police, "I am not a threat" or words to that effect.

33.     Mr. Harrold heard the sound of police officers, and he expected that soon one of the officers would find him and arrest him without incident.

34.     Although the arrest could have, and should have, been routine and peaceful, it turned out to be about as violent and gory as an arrest can be due to the actions of Officer Hagen.

35.     Once other police officers had secured the perimeter of the building, Officer Hagen entered with his K-9 police dog on a leash.  Officer Hagen and the K-9 began a search of the building.

36.     At about 7:10 p.m., while on a short leash held by Officer Hagen, the K-9 bit and "attacked" a cardboard box.  The dog was being aggressive, and Officer Hagen was failing to bring the dog under proper control.   This should have indicated to Officer Hagen that the K-9 was being improperly handled or simply out of control and should not have been used in the line of duty at that time and place.

37.     In about a minute, Officer Hagen and his K-9 police dog had located Mr. Harrold in an upstairs storage room.  The K-9 stood beside Mr. Harrold who was on the floor with his knees under him and head down.

38.     Mr. Harrold glanced up at the dog and the dog saw him.  Mr. Harrold recalls saying "what are you doing" in the type of friendly voice that a person often uses to speak to dogs.  He recalls that the K-9 appeared calm and licked Mr. Harrold's face.  Mr. Harrold then tucked his head back down towards the floor.

39.     Mr. Harrold could hear footsteps and the sound of police officers coming upstairs and approaching his location.

40.     At this time, since the K-9 had located him, Mr. Harrold fully expected that soon a police officer would ask him to surrender, put his hands in the air or behind his back, or some similar command and he intended to comply, give himself up, and allow the police to arrest him.

41.     Mr. Harrold was unaware of the presence of Officer Hagen who remained silent

and out of view.  With all the commotion caused by the other officers, Mr. Harrold did not hear Officer Hagen's presence.  Mr. Harrold remained still and kept his head down so as to not cause the K-9 to attack.

42.    Officer Hagen did not announce his presence or give any warning at that time that he was going to release the K-9 if Mr. Harrold did not comply with whatever order Defendant may have wanted to give.  Officer Hagen gave Mr. Harrold no order at all.

43.    Officer Hagen allowed the K-9 to turn around and directly face Mr. Harrold's rear end.  Mr. Harrold remained in the same submissive, fetal-like position with his head down, and continued expecting he would be asked to submit to an arrest in some manner.  He was willing and prepared to do so.

44.    Yet Officer Hagen did not request or order Mr. Harrold to do anything nor did he give any warning that he was about to deploy the K-9.

45.    Instead of asking or ordering Mr. Harrold to give himself up, surrender or submit to a peaceful arrest (something Mr. Harrold was ready, willing, and able to do), and without giving any warning that the dog was going to be deployed, Officer Hagen gave a signal to the K-9 to sic Mr. Harrold.  The dog did so.

46.    However, the K-9 did not simply bite Mr. Harrold and hold the same bite until an officer could perform an arrest.  The K-9 went into a full blown, violent attack.

47.    While the K-9 continued attacking Mr. Harrold, Officer Hagen no longer exercised control over the animal.  Officer Hagen gave no command to stop and failed to stop the dog from attacking.

48.    Officer Hagen continued allowing the K-9 to attack Mr. Harrold, even as Mr. Harrold made it to his feet and stood with his hands behind his back, making no attempt to flee,

and posing a threat to no one.

49.     Based the positioning of the dog which was facing toward Mr. Harrold's rear end, the K-9's attack was focused on Mr. Harrold's buttocks, anus and scrotum, along with his legs and his amputated stump.

50.     It took a considerable amount of time for Officer Hagen to separate the K-9 from Mr. Harrold and he required assistance from another officer, Sergeant Chris Murphy ("Sergeant Murphy") of the CCPD.

51.     Rather than give clear, forceful commands to the K-9 in order to stop the attack, Officer Hagen mainly tried to pull the dog's leash, much as an amateur, first-time dog owner might do.

52.     There was no legitimate law enforcement reason for Officer Hagen to allow the K-9 to attack Mr. Harrold.  One can only reasonably conclude that Officer Hagen preferred a K-9 attack over any other method of arresting a suspect.  He was plainly motivated by his own selfish and sadistic desire to injure a helpless man.

  **D.**  <u>**Defendant violated clearly established law and CCPD policies governing the use of police dogs and the use of force, particularly in light of Mr. Harrold's status as an unarmed citizen who was not a threat or a flight risk.**</u>

53.     At the time of his arrest, and as confirmed by a Chesterfield County Sheriff's Office Inmate Statement of Personal Articles, Mr. Harrold had in his possession a prosthetic leg, flashlight, debit cards, and a wallet with contents.  He also had a small utility knife that was discovered by officers only after Mr. Harrold was in handcuffs and under arrest.

54.     Mr. Harrold was unarmed, and Officer Hagen had no reason to believe otherwise.

55.     Officer Hagen knew or should have known Mr. Harrold was unarmed.   Sergeant Murphy confirmed as much when he testified under oath at the preliminary hearing that he

observed Mr. Harrold in the building before the encounter with the K-9 and Mr. Harrold was unarmed and there was no reason to think he was armed.

56.     Mr. Harrold had no history of committing violent crimes and Officer Hagen had no reason to believe he was violent or a threat to do violence.

57.     As Mr. Harrold lay motionless on the floor, with his head down and oblivious to the close proximity of Officer Hagen, and especially considering his size and physical characteristics, Mr. Harrold posed no immediate threat to the safety of Officer Hagen, the police dog, or any other officer.  There was no one else present except Mr. Harrold, the officers, and the K-9.

58.     Mr. Harrold did not attempt to flee or resist arrest.  Indeed, he lay still on the floor awaiting directions from an officer.  He was cornered in a small room with no exit.  The only entry way to the room was blocked by Officer Hagen, with backup, and the building as a whole was surrounded by law enforcement officers.

59.     At the preliminary hearing, Officer Shawna Holt ("Officer Holt") of the CCPD testified that the permitter of the building was secured with officers surrounding the building.

60.     This was not one of those circumstances that was so tense, uncertain and/or rapidly evolving that Officer Hagen was required to make a split-second decision about whether or not to deploy the K-9.  Rather, Mr. Harrold lay motionless (and unarmed) on the floor and Officer Hagen had plenty of time to determine how to effectuate an arrest using a reasonable amount of force.

61.     Under the circumstances, Officer Hagen's seizure and use of force with a violent attack by the K9 police dog was objectively unreasonable and in violation of Mr. Harrold's clearly established rights under the Fourth Amendment.

62.     Officer Hagen's deployment of the K-9 also violated CCPD operating procedures

and policies in many ways.

63.     For example, CCPD policy acknowledges that use of a K-9 to make physical contact with a suspect is a significant use of force and one that shall be done only in relatively serious situations and where lesser means of force are not available or reasonably practical.  Officer Hagen's interaction with Mr. Harrold was <u>not</u> such a situation.

64.     CCPD policy requires verbal warnings anytime a K-9 is released and also recognizes that in searching large areas, multiple warnings are necessary and shall be given.  The handler is required to verify the suspect and the suspect's non-compliance before utilizing the K-9.  The policy also givens an example of an appropriate warning to give during building searches and the sample warning includes a specific warning that the K-9 will be released and will bite.

65.     Officer Hagen failed to follow these policies and procedures and, under the circumstances, failed to give an appropriate warning before deploying the K-9 to attack Mr. Harrold.

**E.     <u>The coverup of Defendant's wrongful and unlawful acts.</u>**

66.     In an effort to defend their own actions and the actions of Defendant, several CCPD police officers twisted the truth in an attempt to justify their wrongdoing.

67.     For example, Sergeant Murphy stated in the official incident report that "K9 was deployed on the suspect due to him refusing to give himself up."  Sergeant Murphy's statement is contradicted by the footage from Officer Hagen's body worn camera.   At Mr. Harrold's preliminary hearing, Sergeant Murphy testified under oath that Mr. Harrold was lying on the floor and made no movements.

68.     For his part, Officer Hagen falsely stated in the incident report that "Canine [Kona] located the suspect balled up in a corner and immediately bite [sic] the suspect on the back on the

left leg area." In reality, the K-9's bite was by no means "immediate", and it was only caused by Officer Hagen's command for his K-9 to attack Mr. Harrold for no good reason, it was not a single bite, nor was it only on the back of the left leg area.

69.     In the incident report, Officer Holt describes the K-9's attack of Mr. Harrold as a "successful bite" even though she arrived after the dog attack was over. This is clear evidence of her bias.

70.     Moreover, Sergeant Murphy, Officer Holt, and the Defendant have given inconsistent and conflicting statements about if and when warnings about the K-9 police dog were given. There are also material conflicts about what exactly, if anything, was announced about the K-9, *e.g.,* an announcement that there was a dog on the scene versus a warning that a K-9 is going to be released and will bite.

71.     Unfortunately, Officer Hagen, Sergeant Murphy, and Officer Holt have proven themselves to be untruthful in official government documents in order to defend Officer Hagen's wrongful and unlawful acts.

> **F.     Mr. Harrold's injuries resulting from the mauling by Defendant's K-9 police dog.**

72.     Due to the acts, omissions and/or negligence of Officer Hagen, the K-9 was allowed to attack Mr. Harrold for a considerable period of time.

73.     At the scene, Mr. Harrold was bleeding profusely from the wounds sustained in the mauling. His clothes, shoes, and prosthetic leg were covered in blood and his blood was smeared all over the floor where the K9 attacked him.

74.     Mr. Harrold sustained widespread and severe, deep dog bites over multiple areas of his body, some of which became infected.

75.     Mr. Harrold's prosthetic leg was destroyed by the K-9's powerful jaws. Doctors

found a piece of the prosthetic's rubber sleeve imbedded in one of the wounds on Mr. Harrold's leg where the K9's large teeth had sunk deep into his leg.

76.     The K-9 should have been subject to the control of its handler; however, it was not. Officer Hagen caused the dog to needlessly attack Mr. Harrold and do so for an extended period of time, resulting in severe and painful dog bites over multiple areas of his body, including his amputation stump which was badly injured.  Before gaining control of the K-9, Officer Hagen even allowed the K-9 to bite and scratch at Mr. Harrold's scrotum and anus.

77.     Mr. Harrold's injuries were so severe that a tourniquet and Israeli bandage were applied at the scene to prevent him from bleeding out from his wounds.

78.     Due to the severity of his injuries and the extent of his bleeding, Mr. Harrold was transported from the scene by Chesterfield County Fire & EMS on a stretcher in an ambulance and taken to Chippenham Hospital's emergency department.

79.     After the incident, the K-9 police dog was confined for a period of ten days, the period of time it takes for symptoms of rabies to manifest.  During this time period, Mr. Harrold worried that he may contract rabies or another type of bacterial infection or disease from the dog bites.  In fact, Mr. Harrold did contract meningitis a few months after he was bitten.

80.     As a direct and proximate result of the foregoing, Mr. Harrold has sustained serious and permanent bodily injuries, including, but not limited to, scarring and deformity; physical pain and suffering; he has incurred considerable medical expenses in an effort to be cured of his injuries; he has been prevented from transacting his business and he has been inconvenienced by his injuries and the required medical care and medical appointments for the treatments he required; he has suffered with emotional distress, loss of enjoyment of life, a sense of anxiety, helplessness, hopelessness and stress; he continues to suffer great pain of body and mind; and he is reasonably

expected to continue suffering from such injuries and incurring additional medical expenses and damages in the future.

81.     Defendant's conduct with regard to Mr. Harrold was willful and wanton, malicious, reckless, grossly negligent, and with a conscious disregard for the rights of Mr. Harrold.

<u>**CAUSES OF ACTION**</u>

**COUNT I:**
**DEPRIVATION OF CIVIL RIGHTS UNDER THE FOURTH AMENDMENT –**
**UNLAWFUL SEIZURE**
**(A claim under 42 U.S.C. § 1983 against Defendant Hagen in his individual capacity)**

82.     Plaintiff incorporates by reference and re-alleges each allegation set forth above.

83.     Mr. Harrold has a right against unreasonable seizures under the Fourth Amendment of the Constitution of the United States.

84.     Under these circumstances, it was objectively unreasonable for Officer Hagen to fail to give an appropriate verbal warning before releasing the K-9 police dog to seize Mr. Harrold.

85.     Under the circumstances described above, it was objectively unreasonable for Officer Hagen, an officer who faced no immediate threat, to deploy a K-9 to effectuate a seizure of Mr. Harrold as opposed to another method of arrest that did not involve such violence and risk of serious bodily injury or death.

86.     Officer Hagen's actions in allowing Mr. Harrold to be detained, bitten, attacked, and mauled by the K-9 police dog until he could be handcuffed and arrested, as described herein, constitutes an unreasonable and unlawful seizure under the Fourth Amendment.

87.     Mr. Harrold's Fourth Amendment rights were violated by Defendant who subjected Plaintiff to an unreasonable and unconstitutional seizure of his person.

88.     Officer Hagen was acting under the color of state law as a law enforcement officer

with the CCPD when he undertook the actions described herein.

89.     CCPD's policy and custom concerning the usage of K-9 police dogs was the moving force behind the deprivation of Mr. Harrold's constitutional rights.

90.     As a direct and proximate result of the foregoing, Plaintiff has incurred damages and losses as set forth herein.  Pursuant to 42 U.S.C. § 1983, Mr. Harrold is entitled to monetary relief consisting of compensatory damages, punitive damages, declaratory and injunctive relief, other equitable relief, and his reasonable attorneys' fees and costs.

**COUNT II:**
**DEPRIVATION OF CIVIL RIGHTS UNDER THE FOURTH AMENDMENT –**
**EXCESSIVE FORCE**
**(A claim under 42 U.S.C. § 1983 against Defendant Hagen in his individual capacity)**

91.     Plaintiff incorporates by reference and re-alleges each allegation set forth above.

92.     Mr. Harrold has a right against excessive force at the hands of members of law enforcement in connection with a seizure under the Fourth Amendment of the Constitution of the United States.

93.     Mr. Harrold's Fourth Amendment rights were violated by Defendant who subjected Plaintiff to excessive force as described herein.

94.     Officer Hagen's improper deployment of the K-9 police dog that mauled Mr. Harrold constitutes excessive force in violation of the Fourth Amendment.

95.     Officer Hagen's improper actions that resulted in the K-9's prolonged attack of Mr. Harrold constitutes excessive force in violation of the Fourth Amendment.

96.     Officer Hagen and his K-9 police dog did more than simply seize Mr. Harrold, as in a situation where a K-9 bites a suspect once, holds, and then promptly releases the suspect upon command from its handler.  Rather, Officer Hagen caused Mr. Harrold to endure an extensive dog attack.

97.     Officer Hagen's actions in allowing Mr. Harrold to be detained, bitten, attacked, and mauled by the K-9 police dog until he could be handcuffed and arrested, as described herein, constitutes excessive force under the Fourth Amendment.

98.     Officer Hagen was acting under the color of state law as a law enforcement officer with the CCPD when he undertook the actions described herein.

99.     CCPD's policy and custom concerning the use of K-9 police dogs was the moving force behind the deprivation of Mr. Harrold's constitutional rights.

100.    As a direct and proximate result of the foregoing, Plaintiff has incurred damages and losses as set forth herein. Pursuant to 42 U.S.C. § 1983, Mr. Harrold is entitled to monetary relief consisting of compensatory damages, punitive damages, declaratory and injunctive relief, other equitable relief, and his reasonable attorneys' fees and costs.

## COUNT III:
### DEPRIVATION OF CIVIL RIGHTS UNDER THE FOURTH AMENDMENT
### (A claim under 42 U.S.C. § 1983 against Defendant Hagen in his official capacity)

101.    Plaintiff incorporates by reference and re-alleges each allegation set forth above.

102.    Mr. Harrold had a right against unreasonable seizures and excessive force under the Fourth Amendment of the Constitution of the United States which right was violated by Defendant as described herein.

103.    Officer Hagen, in his official capacity, was acting under the color of state law in his position as an Officer with CCPD when he undertook the actions described herein.

104.    Officer Hagen deprived Mr. Harrold of his Fourth Amendment rights through an official policy or custom of CCPD and/or Defendant, namely CCPD and/or Defendant's policy and custom of subjecting persons such as Mr. Harrold to unreasonable searches and seizures and excessive force by K-9 police dogs, as described herein, despite what CCPD's written policies

may state to the contrary.

105.     CCPD and/or Defendant's policies and customs concerning the use of K-9 police dogs were the moving force behind the deprivation of Mr. Harrold's constitutional rights.

106.     As a direct and proximate result of the foregoing, Plaintiff has incurred damages and losses as set forth herein.  Pursuant to 42 U.S.C. § 1983, for these official-capacity claims, Mr. Harrold is entitled to declaratory and prospective injunctive relief, and his reasonable attorneys' fees and costs.

107.     CCPD's and/or Defendant's policies and customs concerning the use of K-9 police dogs are still effective as of the date hereof and, therefore, Defendant's violation of federal law is ongoing.  The prospective relief Mr. Harrold seeks in this Count is available pursuant to the doctrine recognized in *Ex parte Young*, 209 U.S. 123 (1908).

## COUNT IV:
## ASSAULT
## (A claim against Defendant under Virginia common law)

108.     Plaintiff incorporates by reference and realleges each allegation set forth above.

109.     As set forth above, Officer Hagen and his K-9 made one or more threatening acts towards Mr. Harrold that placed Mr. Harrold in reasonable fear of imminent physical injury.

110.     As a result of Officer Hagen's wrongful and/or intentional actions, Mr. Harrold has suffered damages and losses as set forth herein, including physical injuries, pain and suffering, emotional and mental distress, shame, humiliation, embarrassment and indignity to his feelings, and other damages for which Defendant is liable.

111.     In assaulting Mr. Harrold, Officer Hagen was willfully reckless, he acted with actual malice, and his conduct was so willful and wanton as to evidence a conscious disregard for the rights of Plaintiff such that an award of punitive damages is appropriate and just.

## COUNT V:
## BATTERY
### (A claim against Defendant under Virginia common law)

112.    Plaintiff incorporates by reference and realleges each allegation set forth above.

113.    As set forth above, Officer Hagen committed one or more intentional and unwanted touchings of Mr. Harrold in a violent, harmful, and/or offensive manner by and through his use of the K-9 police dog.

114.    Officer Hagen committed one or more intentional and unwanted touchings of Mr. Harrold by setting in motion the K-9 police dog that bit, scratched, attacked, and mauled Mr. Harrold's person.

115.    Officer Hagen's actions were without justification, excuse, or consent, and his actions were not taken in self-defense.

116.    As a result of Officer Hagen's wrongful and/or intentional actions, Mr. Harrold has suffered damages and losses as set forth herein for which Defendant is liable.

117.    In battering Mr. Harrold, Officer Hagen was willfully reckless, he acted with actual malice, and his conduct was so willful and wanton as to evidence a conscious disregard for the rights of Mr. Harrold such that an award of punitive damages is appropriate and just.

## COUNT VI:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (A claim against Defendant under Virginia common law)

118.    Plaintiff incorporates by reference and re-alleges each allegation set forth above.

119.    As detailed above, Defendant subjected Mr. Harrold to intentional, outrageous and intolerable conduct, intending to cause him emotional distress, that resulted in Mr. Harrold suffering severe emotional distress.

120.    Officer Hagen had the specific purpose of inflicting emotional distress on Mr. Harrold and/or intended his specific conduct and knew or should have known that emotional distress would likely result.

121.    The conduct of the Defendant offends against the generally accepted standards of decency and morality and is atrocious and utterly intolerable in a civilized community.

122.    Due to the actions of the Defendant, Mr. Harrold suffered severe emotional distress and other damages and losses as set forth herein for which Officer Hagen is liable.

123.    Defendant's conduct was willful and wanton, malicious, reckless, grossly negligent, and with a conscious disregard for the rights of Mr. Harrold such that an award of punitive damages is appropriate and just.

## COUNT VII:
## NEGLIGENCE
### (A claim against Defendant under Virginia common law, pleaded in the alternative)

124.    Plaintiff incorporates by reference and re-alleges each allegation set forth above.

125.    At all relevant times, it was the duty of Officer Hagen to use ordinary and/or reasonable care and have due regard for the safety of others and, specifically, to not act in such a way with regard to another person, such as Mr. Harrold, so as to cause injury unnecessarily.

126.    At all relevant times, it was the duty of Officer Hagen to refrain from negligent and/or unlawful acts.

127.    Notwithstanding said duties, Officer Hagen carelessly, recklessly, and negligently acted as set forth above and caused injury to Mr. Harrold.

128.    In doing so, Officer Hagen breached his foregoing duties of ordinary and/or reasonable care, and he was negligent.

129.    As a result of Officer Hagen's negligence, Mr. Harrold has suffered damages and losses as set forth herein for which Defendant is liable.

**COUNT VIII:**
**GROSS NEGLIGENCE**
**(A claim against Defendant under Virginia common law, pleaded in the alternative)**

130.    Plaintiff incorporates by reference and re-alleges each allegation set forth above.

131.    At all relevant times, it was the duty of Officer Hagen to use ordinary and/or reasonable care and have due regard for the safety of others and, specifically, to not to act in such a way with regard to another person, such as Mr. Harrold, so as to cause injury unnecessarily.

132.    At all relevant times, it was the duty of Officer Hagen to refrain from grossly negligent and/or unlawful acts.

133.    Officer Hagen was grossly negligent in that he showed such indifference to Mr. Harrold as to constitute an utter disregard of caution amounting to a complete neglect for Mr. Harrold's safety and welfare.

134.    As a result of Officer Hagen's gross negligence, Mr. Harrold has suffered damages and losses as set forth herein for which Defendant is liable.

135.    Officer Hagen was grossly negligence, willfully reckless, he acted with actual malice, and his conduct was so willful and wanton as to evidence a conscious disregard for the rights of Mr. Harrold such that an award of punitive damages is appropriate and just.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff, Richard P. Harrold, respectfully requests that this Court:

A.    Enter judgment in his favor and against Defendant, Lewis ("Lewie") J. Hagen III;

B.    Declare the acts and practices complained of herein to be in violation of Plaintiff's rights as secured by the Fourth Amendment of the Constitution of the United States, as enforced

by 42 U.S.C. § 1983;

      C.      Issue a permanent injunction prohibiting Defendant from continuing its policies and practices that are inconsistent with the Constitution;

      D.      Award Plaintiff money damages for all pecuniary losses, including, but not limited to, medical expenses, lost wages and legal expenses incurred and to be incurred in an amount to be shown at trial;

      E.      Award Plaintiff money damages for Defendant's violation of Plaintiff's federal constitutional and civil rights, mental and/or emotional distress, inconvenience, humiliation, and embarrassment in an amount to be shown at trial;

      F.      Award Plaintiff compensatory damages in the amount of Three Million Dollars ($3,000,000.00) or such amount to be shown at trial;

      G.      Award Plaintiff punitive damages in an amount to be shown at trial;

      H.      Award Plaintiff any and all reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988(b);

      I.      Award Plaintiff any and all expert fees, pursuant to 42 U.S.C. § 1988(c);

      J.      Award Plaintiff pre-judgment interest from December 26, 2021 until the day of judgment;

      K.      Award Plaintiff post-judgment interest from the date of judgment;

and

      L.      Award Plaintiff any and all other relief the Court deems just and appropriate, including leave to amend the facts, add parties and claims, and amend damages sought as further evidence is obtained through discovery in this matter.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

RICHARD P. HARROLD,

*Plaintiff*

Dated: December 20, 2023.          By:_____/s/ Robert J. Allen_____
                                                                    Counsel

Robert J. Allen (VSB No. 65214)
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, VA 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: rallen@thorsenallen.com
    *Counsel for Plaintiff*